IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

LINDSAY BLANK, on behalf of herself
and other persons similarly situated,

Case No.: 16-cv-11092

                Plaintiff,

JUDGE LEMMON

vs.

MAG. JUDGE KNOWLES

TOMORROW PCS, LLC, *et al*,

                Defendants.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO PROCEED AS A COLLECTIVE ACTION AND FOR JUDICIAL NOTICE TO POTENTIAL OPT-IN PLAINTIFFS

In this Fair Labor Standards Act ("FLSA") case, the Plaintiffs worked as sales associates at Defendants' cell phone stores. They allege that Defendants did not pay them overtime. They also allege that Defendants did not factor commission or "incentive" payments into the Plaintiffs' weekly pay for the purposes of calculating overtime. The Plaintiffs make these claims both on their own behalf and also for all those other sales associates similarly situated.

The Court has already certified one class of Defendants' employees.[1] That class was limited to sales associates who worked for the Defendants in Louisiana.[2] Following the addition of new Plaintiffs, who provided further insight into Defendants' pay practices, Plaintiffs determined that Defendants' failure to pay overtime went much further than the class certified by the Court. Based on this discovery, and to ensure the public policy goals and efficiencies

---

[1] Rec Doc. 17.

[2] *Id.*

envisioned by the FLSA, the Plaintiffs now ask the Court to expand the class that was previously certified, and to issue notice to those similarly situated class members who were not part of the initial class certification process.

## FACTUAL BACKGROUND

Tomorrow Telecom Incorporated ("Telecom") is a Texas-based, MetroPCS-brand cell phone dealer that owns and operates other MetroPCS authorized dealers (hereinafter referred to as "Sub-Dealers") in Louisiana, Texas, Kansas, North Carolina, New Mexico, Tennessee, Missouri, and Kentucky.[3] Defendant Tomorrow PCS ("TPCS") is one such Telecom Sub-Dealer located in Louisiana.[4] Telecom's Sub-Dealers specialize in selling phones and cell phone service programs to customers at over 150 retail locations in at least eight states.[5] Telecom, TPCS, and the other Telecom Sub-Dealers all share common ownership.[6]

---

[3] *See* Exhibit 1. Oliska Gary identifies this list as reflecting the locations of Telecom's Sub-Dealers as they are identified in the Wireless Standard program used by all Sub-Dealers. Gary Decl. ¶ 8. *See also* First Amended Complaint ("FAC"), Rec. Doc. 30, at ¶ 16.

[4] Gary Decl. ¶ 3; Garcia Decl. ¶ 3.

[5] *See* Exhibit 1; Gary Decl. ¶ 8; Garcia Decl. ¶ 9.

[6] FAC ¶ 18.

Telecom employs more than four-hundred sales associates at their various retail stores in at least eight states.[7] Telecom began in Texas but quickly expanded its operations to other states.[8] When Telecom opened new operations in other states, it would send out roving General Managers to implement its company policies and train new employees.[9] Telecom also employed Finance Associates that would "hold classes for sub-dealers."[10] Throughout their operations, however, Telecom did not pay sales associates overtime wages for overtime hours worked.[11] Additionally, Telecom did not include incentive or commission payments in the calculation of its sales associates' regular rate of pay.[12]

---

[7] *See* Exhibit 1. *See also* LinkedIn profile for Hoon Choi, Telecom's Vice President of Sales and Training, attached as Exhibit 2. Hoon Choi states he "Led a team of over 400 employees ranging from frontline sales associates to market General Managers that sold MetroPCS products within 140 stores across 9 markets." Additionally, Jeff Baik, Chief Financial Officer of Telecom, states that he handles payroll for 450-plus employees. *See* Jeff Baik LinkedIn profile attached as Exhibit 3.

[8] Gary Decl. ¶ 3; Garcia Decl. ¶ 3. *See also* Employee Handbook, attached as Exhibit 4, p. 2, wherein TPCS represents that it is "one of the largest independent MetroPCS dealers in the United States."

[9] Gary Decl. ¶ 4; Garcia Decl. ¶ 4.

[10] Telecom identifies Jorge Cruz and Ethan Lee as Finance Associates who held classes for all Telecom Sub-Dealers. Def. Supp. Disc. Resp. dated Mar. 8, 2018, attached as Exhibit 5, at p. 2.

[11] FAC ¶ 50.

[12] FAC ¶ 51.

Plaintiff Lindsay Blank initially filed this FLSA collective action lawsuit against TCPS.[13] The Court conditionally certified a class of TPCS employees who worked as sales associates for the last three years.[14] After certification, four former sales associates opted-in to this action to recover unpaid overtime.[15] Some of the opt-ins had specialized knowledge of the Defendants' operations that was not available to the original plaintiff. Oliska Gary, one of the opt-in Plaintiffs, had also worked as a Store Manager, Operations Manager, and Finance Manager during her employment with Defendants.[16] Nelly Garcia had worked as a Sales Associate, Logistics Manager, Store Manager, and Trainer for both TPCS and Tomorrow Telecom.[17] In addition to Ms. Gary and Ms. Garcia, the Plaintiffs also learned new information from the deposition of Jong Park, a former defendant in this action and the "owner" or "shareholder" of both Telecom and TPCS.[18]

Based on this new information, Plaintiffs discovered Telecom's putative liability as a far-ranging employer of sales associates, just like the Plaintiffs, in various states. Plaintiffs moved to

---

[13] Rec. Doc. 1.

[14] Rec. Doc. 17.

[15] Rec. Docs. 35, 38, 48, 51. Two of the four opt-ins have been voluntarily dismissed from this action. Rec. Doc. 90.

[16] Gary Decl. ¶ 6.

[17] Garcia Decl. ¶¶ 5, 8. Nelly Garcia is a plaintiff in *Monroe v. Tomorrow Telecom Inc. et al*, No. 17-8072 (E.D. La. filed June 21, 2017), a separate action against the same defendants also pending before this Court.

[18] Jong Park was dismissed from this action on May 12, 2017. Rec. Doc. 23.

amend the complaint to add new FLSA class claims against Telecom on behalf of sales associates at all of Telecom's locations.[19] Telecom filed a motion to dismiss for lack of personal jurisdiction and for failure to state a claim, which was denied on September 28, 2017.[20] Thereafter, the Court set discovery and motion deadlines for Plaintiffs' expanded FLSA class.[21]

## LEGAL STANDARD

The FLSA gives workers like the Plaintiffs the right to sue collectively on behalf of themselves and others similarly situated for violations of the minimum wage and overtime protections of the Act.[22] Unlike Fed. R. Civ. P. 23 class actions in which class members are automatically part of the class unless they affirmatively opt-out, each individual class member in a FLSA representative action must "opt in" by consenting in writing to becoming a member of the suit.[23] District courts in the Fifth Circuit have generally employed the two-tiered approach to

---

[19] Rec. Doc. 21. Plaintiff also added Rule 23 class allegations for violations of state law. Those Rule 23 allegations are separate and apart from the FLSA class alleged in this motion.

[20] Rec. Docs. 49, 66. Part of the basis for denying Telecom's motion was email correspondence between Telecom and TPCS employees that discussed health insurance for employees and contained instructions from Telecom to TPCS employees regarding sales promotions. Rec. Doc. 66, pp. 7-8.

[21] Rec. Doc. 82. Magistrate Knowles has extended these deadlines. Rec. Doc. 113.

[22] 29 U.S.C. § 216(b); *Hoffman La-Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989).

[23] 29 U.S.C. § 216(b); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995).

5

certifying FLSA representative actions described in *Mooney v. Aramco Services Company*.[24] The

*Mooney* court described this approach as follows:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision--usually based only on the pleadings and any affidavits which have been submitted--whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery. The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.[25]

To secure preliminary certification of their collective action under the lenient preliminary

standard described in *Mooney*, the Plaintiffs need only make substantial allegations that they and

the Putative Class members are similarly situated.[26] The Plaintiffs may accomplish this through

their pleadings as well as supplementary materials such as affidavits and other supporting

_____

[24] *See also Boudreaux v. Schlumberger Tech Co*. (M. Hill) No. 6:14-2267 (W.D. La. Feb 25, 2015) (noting "the 'two-step' method is the preferred method in the Fifth Circuit for the analysis and will be used by this Court.") *Basco v. Wal-Mart Stores*, 2004 WL 1497709, *4 (E.D. La 2004) (two-step method discussed in Mooney is "the preferred method for making the similarly situated analysis"); *Williams v. Bally's Louisiana*, 2006 WL 1235904, at *2 (E.D. La. May 5, 2006) ("[A] consensus of courts apply a two-step analysis for conditional certification outlined in *Mooney*...").

[25] *Mooney*, 54 F.3d at 1213-14.

[26] *Id.*

documents.[27] In light of the FLSA's remedial purpose, courts have repeatedly held that the similarly situated requirement of 216(b) must be interpreted broadly to permit workers to collectively pursue their FLSA claims.[28]

To proceed collectively, the FLSA requires there be a group of people who are "similarly situated" to the lead plaintiff.[29] To satisfy this requirement, the Plaintiffs need not show that their case is identical to that of the proposed class, but merely similar. "[S]light differences in job duties or functions do not run afoul of the similarly situated requirement."[30] Further, "an FLSA class determination is appropriate when there is a demonstrated similarity among the individual

---

[27] *Id.*

[28] *See, e.g., Hipp v. Liberty National Ins. Co.*, 252 F.3d 1208, 1214 (11th Cir. 2001) ("We conclude the similarly situated requirement is not particularly stringent[.]"); *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 431 (S.D. N.Y. 1995) (imposition of a rigorous inquiry would undermine "the importance of early judicial management to assure efficient resolution of similar claims."); *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991) (rigorous inquiry into § 216(b)'s similarly situated requirement "would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' of the anti-discrimination provisions of the FLSA." (quoting *Hoffman-LaRoche, Inc.*, 493 U.S. at 173)).

[29] 29 U.S.C. § 216(b); *Schlumberger* at 4; *Grayson v. Kmart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).

[30] *Schlumberger* at 5, quoting *Tolentino v. C & J Spec-Rent Services, Inc.*, 716 F.Supp.2d 642, 652 (S.D. Tex. 2010); *See also Smith v. Lowe's*, 2005 U.S. Dist. LEXIS 9763 at *9; *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 616 (S.D. Tex. 1979); *De Jesus De Luna-Guerrero v. North Carolina Grower's Ass'n*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004).

situations . . . [and] some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]."[31]

The standard for establishing whether a plaintiff is similarly situated to a putative class at this "notice stage" is commonly described as lenient. In *Prejean, et al v. O'Brien's Response Management, Inc.,*[32] Magistrate Judge Wilkinson's report recommending conditional certification stated that:

> The cases in which conditional certification has been granted or upheld are clear that the similarly situated standard at the initial conditional certification stage is lenient, plaintiffs' burden is not heavy, the evidence needed is minimal and the existence of some variations between potential claimants is not determinative of lack of similarity.[33] (Emphasis by Judge Wilkinson).

For purposes of authorizing notice during the early stages of litigation, a court need only make a preliminary determination of whether there exists a class of potential similarly situated individuals.[34] The district court in *Sperling v. Hoffman-LaRoche, Inc.*—the seminal case that was ultimately affirmed by the U.S. Supreme Court—stated:

> [N]otice to absent class members need not await a conclusive finding of similar situations. To impose such a requirement would condemn any large class claim…to a chicken-and-egg limbo in which the class could only notify all its members to gather together after it had gathered together all its members, and from which the

---

[31] *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 877-78 (E.D. La. 2008).

[32] 2013 WL 5960674 (E.D. La. 2013).

[33] *Prejean* at *8.

[34] *White v. Integrated Elec. Techs., Inc.* 2013 WL 2903070 at *8 (E.D. La. June 13, 2013).

class could escape only by refusing entry after some unpublicized cutoff date to additional class members who thereafter stumble upon the case by themselves.[35]

The district court in *Hoffman-LaRoche* also observed that allowing notice to opt-in plaintiffs prior to a final decision on the "similarly situated" question ensures that the experiences of other class members are considered, and so leads to an "informed and conclusive" determination on that issue.[36] To satisfy this modest factual showing, some courts have relied solely on the allegations contained in the complaint.[37] Here, Plaintiffs have their sworn declarations and email correspondence between Plaintiffs and Telecom employees. This evidence, taken together, clearly shows that other class members similarly situated to Plaintiffs exist and are entitled to receive notice of this lawsuit.

## ARGUMENT

In support of this motion, Plaintiffs rely on the allegations in their amended complaint, Plaintiffs' sworn affidavits, and email correspondence from Telecom employees. Plaintiffs argue that this information establishes that there is likely a group of similarly situated individuals who work for Telecom in other states that are entitled to receive notice of this lawsuit.

───────────────────

[35] *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 406 (D.N.J. 1988), aff'd, 862 F.2d 439 (2d Cir.), aff'd, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).

[36] *See also, Richards*, *supra*, at 548. ("The burden is not heavy and may be met by making substantial allegations of violations supported by affidavits.") (citing *Grayson v. Kmart Corp supra*) *Realite v. Ark Restaurants Corp*., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) ("The burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'").

[37] *See, e.g., Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 432 (S.D. N.Y. 1995); *Heagney v. European American Bank*, 122 F.R.D. 125, 128 (E.D.N.Y. 1988); *Behr v. Drake Hotel*, 586 F. Supp. 427, 430-31 (N.D. Ill. 1984).

        **1.   Plaintiffs have established that they are similarly situated to other Telecom sales associates.**

In the first amended complaint, Plaintiffs allege that sales associates were not paid the proper overtime wages for all the hours they worked for the Defendants.[38] In their declarations, Plaintiffs elaborate on Telecom's systemic unlawful pay practices that were uniformly applied throughout its operations. Emails from Telecom employees also provide helpful insight into how Plaintiffs and other sales associates were compensated.[39] This evidence establishes that there is sufficient evidence to show that a substantial class of other sales associates employed by Telecom were likely treated similarly, if not identically. The attached exhibits show that the Putative Class is similarly situated because:

- Telecom instructs its Sub-Dealers' employees on how to calculate their sales associates' compensation and implement chargebacks.[40]

- Telecom implements common employment policies on its sales associates through the use of an Employee Agreement and Operations Manual.[41]

_____

[38] FAC ¶¶ 50-51.

[39] Plaintiffs attempted to obtain more email correspondence from Jong Park, Michael Lim, Jeff Baik, and Catherine Kim, but Defendants were unable to produce any emails because they were destroyed. The destruction of these emails is the subject of Plaintiffs' Motion for Sanctions for Spoliation, currently pending before Magistrate Knowles. Rec. Doc. 116.

[40] Gary Decl. ¶ 9; *See also* Exhibit 6 and Exhibit 7.

[41] *See* Exhibit 8 and Exhibit 9.

- Telecom implements company-wide policies governing the compensation of its sales associates.[42]

- Telecom's sales associates, including the Plaintiffs, had the same job duties.[43]

- Telecom's sales associates were paid their regular rate of pay regardless of the number of hours worked in a work week.[44]

- Telecom did not, as a matter of policy, include any commission paid to sales associates in calculating their regular rate of pay.[45]

- Plaintiffs and other sales associates were all supervised and controlled by Telecom General Managers.[46]

- Telecom operates more than 150 Metro PCS authorized dealers (Sub-Dealers) located in at least eight states.[47]

- Telecom's Sales Associates, including the Plaintiffs, had the same job duties.[48]

---

[42] *See* Exhibit 10 and Exhibit 11, the chargeback form attached to the email. Tomorrow Talk is the name of the entity over Telecom's New Mexico Sub-Dealers.

[43] Gary Decl. ¶ 11; Garcia Decl. ¶ 6.

[44] Gary Decl. ¶ 12; Garcia Decl. ¶ 13.

[45] FAC ¶ 51.

[46] Gary Decl. ¶ 4; Garcia Decl. ¶ 4.

[47] *See* Exhibit 1. *See also* LinkedIn profile for Hoon Choi, Telecom's Vice President of Sales and Training, attached as Exhibit 2. Hoon Choi states he "Led a team of over 400 employees ranging from frontline sales associates to market General Managers that sold MetroPCS products within 140 stores across 9 markets." Additionally, Jeff Baik, Chief Financial Officer of Telecom, states that he handles payroll for 450-plus employees. *See* Jeff Baik LinkedIn profile attached as Exhibit 3.

[48] Gary Decl. ¶ 11; Garcia Decl. ¶ 6.

Given the nature of the violations and the fact that they stem from Telecom's general failure to pay overtime, this action does not arise from circumstances purely personal to the Plaintiffs but rather from a generally applicable rule, policy, or practice. Plaintiffs have established through their amended complaint a clearly sufficient basis for this Court to conclude she and the Putative Class are similarly situated.

Plaintiffs' allegations of common practices that resulted in FLSA violations are sufficient to meet their preliminary burden of demonstrating that the Putative Class is "similarly situated" for the purposes of 29 U.S.C. § 216(b).[49] While members of the putative class worked under several different entities, this does not preclude certification of a nation-wide class to encompass all sales associates that were subject to Telecom's unlawful compensation policies. In *Lima v. International Catastrophe Solutions, Inc.,* the plaintiffs sought to certify a class that included

---

[49] *See In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ 1145 (NRB), 2010 WL 4340255, at *4 (S.D.N.Y. Oct. 27, 2010); *Lang v. DirecTV, Inc.*, 2011 WL 6934607, at *3 (E.D. La. Dec. 30, 2011) (granting collective action certification where the plaintiff brought claims on behalf of all subcontractors performing work for the defendant and even where "…threshold employment questions existed, Plaintiffs have alleged enough to satisfy the initial burden at this stage."); *Crain v. Helmerich & Payne Int'l Drilling Co.*, 1992 WL 91946 at *2 (E.D. La. April 16, 1992) (even where the hours and locations of potential class members' work may have varied, a collective action was appropriate because "the fundamental allegation – that according to company policy the time spent in job related meetings and training was uncompensated – is common to all the plaintiffs and dominates each of their claims." (internal quotations omitted)); *Whitworth v. Chiles Offshore Corp.*, 1992 WL 235907 *1 (E.D. La. 1992) (certifying collective action where "the allegation is that Chiles failed to pay all of these individuals as a matter of company policy, not on the basis of separate decisions"); *Aguilar v. Complete Landsculpture, Inc.*, 2004 WL 2293842, *4 (N.D. Tex. 2004) (where workers "were compensated under the same regimen," they were similarly situated despite variations in their hours and rates of pay).

subcontractors that were not otherwise identified or named as defendants.[50] The plaintiffs argued that the defendant general contractor would have records reflecting the pay and hours worked by employees of unnamed subcontractors and that the main issue was the defendant general contractor's joint employer liability for FLSA violations.[51] The court found the plaintiffs' arguments persuasive and certified a class including employees of other unidentified subcontractors, noting that a review of the subcontractors' pay records and agreements with the general contractor would reveal whether there was a common plan to improperly pay overtime wages.[52]

Furthermore, Plaintiffs have made an adequate showing that there is a class of similarly situated sales associates entitled to receive notice of this suit.[53] In the present case, Plaintiffs have made substantial allegations that Telecom's policy and/or practice of not paying overtime was applied to both the Plaintiffs as well as a "similarly situated" Putative Class. Thus, the detailed allegations reported in their amended complaint, declarations, Telecom's discovery responses, and email correspondence with Telecom employees demonstrate more than enough facts to meet the

_____

[50] 493 F. Supp. 2d 798-99 (E.D. La. 2007).

[51] *Id.* at 799.

[52] *Id.* at 800.

[53] *See Kmart*, at 1091, 1097-99 (finding evidence, consisting primarily of affidavits, was sufficient for district court to authorize notice be sent to employees in Kmart's Southern Region, which covered approximately 700 stores in eighteen states, Puerto Rico, and the Virgin Islands); *Schwed*, at 376 (N.D.N.Y. 1995) (relying on allegations made in the complaint along with two supporting affidavits in permitting notice be sent to approximately 500 class members); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 252 (M.D. Tenn. 1996) (finding nationwide notice authorized after plaintiffs had shown evidence of uniform pay policies that violated the FLSA).

13

lenient standard under *Mooney* and its progeny. Based on the foregoing, Plaintiffs request that the Court certify the following class:

> **"All sales associates who worked or are working for Tomorrow Telecom Incorporated, either directly or indirectly through any Sub-Dealer, during the previous three years and who are eligible for overtime pay pursuant to the FLSA, 29 U.S.C. § 207 and who did not receive full overtime compensation."**

Plaintiffs also request that the Court require notice to issue to putative class members, as described in more detail below.

### 2. The Court has discretion to authorize notice be sent to potential opt-in plaintiffs in FLSA actions.

This discretionary authority of courts to facilitate notice to potential opt-in plaintiffs in collective actions was recognized by the United States Supreme Court in *Hoffman-LaRoche*.  In that case, the Court resolved a conflict among the Courts of Appeals as to whether district courts could authorize and facilitate notice of pending actions under the Age Discrimination in Employment Act ("ADEA").[54]  The Court held, "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) (1982 ed.), as incorporated by 29 U.S.C. § 626(b) (1982 ed.), in ADEA actions by facilitating notice to potential plaintiffs."[55]

The Court also noted that allowing plaintiffs to proceed collectively benefits both the individuals by allowing them to take advantage of the pooling of resources and the judicial system by allowing for efficient resolution in one proceeding of common issues of law and fact.[56]

––––––––––––––––––––––––––––

[54] *Hoffman-LaRoche*, 493 U.S. 163, 110 S. Ct 482.

[55] *Id.*, at 169, 110 S. Ct. at 486.

However, the Court recognized these benefits depend on potential plaintiffs receiving timely and accurate notice concerning the pending collective action.  Thus, the Court felt section 216(b) gave district courts the power to facilitate notice, and that such power should be exercised during the early stages of the litigation. The Court stated:

> Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. It follows that once an ADEA action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.[57]

Lower courts subsequent to the Court's decision in *Hoffman-LaRoche* have uniformly exercised this discretionary power to facilitate notice.[58] Even prior to *Hoffman-LaRoche*, courts found that authorizing notice was not only well within their discretionary authority but oftentimes necessary to effectuate the FLSA's broad remedial purpose.  For example, in upholding a district court's decision to authorize notice in a FLSA action to recover minimum and overtime wages, the Second Circuit noted that, "[i]n our view, this holding comports with the broad remedial

---

[56] *Id.*, at 170, 110 S. Ct. at 486.

[57] *Id.*, at 170-71, 110 S. Ct. at 486 (citation omitted). *See also Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) ("[C]ourts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management.").

[58] *See e.g., Sandoz v. Cingular Wireless, LLC* 2013 U.S. Dist. LEXIS 47018 (W.D. La. Mar. 27, 2013); *Donohue v. Francis Servs., Inc.*, Civ. A. No. 041-170, 2004 WL 1161366 (E.D. La. May 24, 2004); *Prejean, et al v. O'Brien's Response Management,* Inc. 2013 WL 5960674 (E.D. La. 2013).

purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits."[59] The court in *Allen v. Marshall Field & Co.*[60] also recognized the benefit and necessity of authorizing notice when it stated, "[i]t would be anomalous for Congress to provide a class action remedy, and, at the same time require that a class action's existence be hidden from potential class members."[61] In addition, the court in *Woods v. New York Life Ins. Co.*[62] stated that "[W]e think it sufficiently unlikely that Congress, having created a procedure for representative actions, would have wanted to prevent the class representative from notifying other members of the class that they had a champion . . . ." Similarly, in *Lusardi v. Xerox Corp.*[63] the court found that the effectiveness of the class remedy was directly related to potential plaintiffs being informed of the suit via court-authorized notice:

> [W]e cannot ignore the simple truth that effectiveness of class enforcement…would be vastly diminished if named plaintiffs were not allowed to notify those who may be similarly situated of their right to be included in the class through written consent.  The meaningfulness of the…class remedy should not depend on the vagaries of rumor and gossip, through which certain fortunate grievants might happen to hear of a pending suit.[64]

---

[59] *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (2d Cir. 1978).

[60] 93 F.R.D. 438 (N.D. Ill. 1982).

[61] *Id.*, at 442.

[62] 686 F.2d 578, 581 (7th Cir. 1982).

[63] 99 F.R.D. 89 (D.N.J. 1983).

[64] *Lusardi*, 99 F.R.D. at 93.

In *Hoffman-La Roche*, the Supreme Court identified the main benefits of a collective action under section 216(b): "A collective action allows . . . Plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged…activity."[65] Ultimately, the purpose of judicial notice is to give employees accurate and timely notice concerning the pendency of the collective action so they can make an informed decision about whether to participate.[66]

Thus, it is well-established that this Court has discretion to approve and authorize notice to potential plaintiffs and such notice is in many ways essential to effectuating the broad remedial purposes of the FLSA.

### 3. Prompt conditional certification of this action will promote judicial economy.

Unlike Rule 23 class actions, the statutes of limitations on individual workers' claims are not automatically tolled until such worker files his or her consent-to-sue form with the Court, so each week that passes causes workers who have not learned of this suit and filed their consent to sue forms to lose the ability to claim their unpaid wages for that week.[67] As such, prompt

---

[65] *Hoffman-LaRoche* at 170.

[66] *Id.*

[67] 29 U.S.C. §216(b), 29 U.S.C. §257. *See Redman v. U.S. West Business Resources, Inc.*, 153 F.3d 691, 695 (8th Cir. 1998).

certification and notice will advance the remedial goals of the FLSA and promote efficient resolution of claims.

Also, Judicial notice providing employees an opportunity to pursue their claims in one forum will create the significant judicial economies recognized in *Hoffman-La Roche*. Indeed, by including all the individuals who wish to pursue their claims in one action, the judicial system will benefit by resolution of this case as a collective action at least through the discovery phase, since identical issues of law and fact exist among all employees who were not compensated properly for their hours worked.[68] Such collective adjudication will avoid the proliferation of individual lawsuits which could result in disparate rulings and waste of judicial and party resources. Under the present circumstances, requiring Plaintiffs and potential opt-in plaintiffs to file separate cases in multiple federal district courts would not be an economical use of resources.

### 4. Plaintiffs' proposed notice, class definition, and opt-in period are narrowly tailored to ensure only those similarly situated join.

The carefully drafted notice proposed by Plaintiffs will be sent to those on the list provided by Telecom. The notice specifically explains that the only employees of Telecom who are able to join are those who: (1) were employed by Tomorrow Telecom Incorporated as sales associates within the past three years, and (2) were not paid overtime for the hours that they worked in excess of 40 hours during any work week. This will ensure that only those similarly situated will join.[69]

---

[68] *See Hoffman-La Roche*, 493 U.S. at 170.

[69] Plaintiffs agree to limit this class to exclude TPCS employees because they already had an opportunity to join this action when the Louisiana Class was certified.

Plaintiff's proposed Notice should be approved by the Court.[70] As required, it is "timely, accurate, and informative."[71] It makes clear that only those who were not paid overtime are eligible for the case. As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency and scope of the collective action.

Because notice will be sent to former employees dating back three years, the addresses Defendants have on file for several putative plaintiffs will likely be out of date. Word-of-mouth or "through the grapevine" are how many opt-ins become notified of these lawsuits—and that process is an organic one which takes time. Since nothing prevents the parties from litigating the underlying issues in this case while the notice period runs, the Defendants are not prejudiced by maintaining an opt-in period of 90 days.

In addition, the opt-in class should include Telecom sales associates who did not receive overtime pay dating back three years prior to the filing of this complaint. This three-year period is clearly established as the statute of limitations period for willful violations of the overtime

---

[70] Undersigned counsel has had a virtually identical Judicial Notice approved by various courts in this District.  *See Lopez v. ASJ Construction,* No. 17-2241, Rec. Doc. 23 (Morgan, S.); *Martinez v. Southern Solutions Land Management*, No. 14-2366 (Milazzo, J.); *Calix v. Ashton Marine*, No 14-2430 (Duval, S.); *Banegas v. Calmar Corporation*, No. 15-593 (Lemelle, I.); *Rios v. Classic Southern Home Construction*, No. 15-4104 (Africk, L.); *Lopez v. Hal Collums Construction,* No. 15-4113 (Barbier, C.) and *Leon v. Diversified Concrete*, No. 15-6301 (Barbier, C.); *Esparza v. Kostmayer Construction*, No. 15-4644 (Morgan, S.); *Figueroa v. Southern Wolf Construction*, No. 16-674 (Fallon, E.); *Hernandez v. Exterior Walls*, No. 15-4392 (Milazzo, J.); *Nieto v. Pizzati Enterprises,* No. 16-5352 (Brown, J.); *Castellanos v. Saints & Santos Construction*, No. 16-2501 (Lemelle, I.); *Caceres v. Custom Drywall & Painting, LLC,* No. 17-6949 (Barbier, C.); *Maldonado v. New Orleans Millworks*, No. 17-1015 (Barbier, C.).

[71] *See Hoffman-LaRoche*, 493 U.S. at 172.

previsions of the FLSA.[72]  Furthermore, several other Courts in this District have granted a three-year claims period for opt-in plaintiffs on numerous other occasions.[73]

To facilitate the sending of the notice and consent forms, Plaintiffs also move this Court for an order directing Telecom to provide the names, last known addresses, email addresses, and phone numbers of the potential class members. In *Hoffman-LaRoche*, the Supreme Court held, "[t]he District Court was correct to permit discovery of the names and addresses of the discharged employees," finding there were no grounds to limit such discovery under the facts and circumstances of the case.[74] District Courts routinely grant disclosure of class members' contact information in conjunction with authorizing notice.[75] Plaintiffs ask that this Honorable Court order Telecom to produce the names, addresses, email addresses, and telephone numbers of class members no later than two weeks after the signing of the order.

---

[72] 29 U.S.C. §255(a).

[73] *See Hernandez v. Exterior Walls*, No. 15-4392 (Milazzo, J.); *Calix v. Ashton Marine*, No. 14-2430 (Duval, S.); *Banegas v. Calmar Corporation*, No. 15-593 (Lemelle, I.); *Rios v. Classic Southern Home Construction*, No. 15-4104 (Africk, L.); *Leon v. Diversified Concrete,* No. 15-6301 (Barbier, C.); *Esparza v. Kostmayer Construction*, No. 15-4644 (Morgan, S.); *Figueroa v. Southern Wolf Construction*, No. 16-674 (Fallon, E.).

[74] *Hoffman-LaRoche*, at 170, 110 S. Ct. at 486.

[75] *See*, e.g., *Lima v. International Catastrophe Solutions,* 493 F.Supp.2d 793, 805 (E.D. La. 2007) (Fallon, E.), *Smith v. Lowe's*, 2005 U.S. Dist. LEXIS 9763 *14-15 (S.D. Ohio May 11, 2005) (ordering defendants to provide the identities, contact information, and dates of employment within twenty days of the order); *Ark Restaurants Corp*, at 309-10 (ordering defendants to provide names and addresses within a week after the date of the order); *Belcher*, at 252 (ordering defendant to disclose names and addresses within two weeks of date of order); *Schwed*, at 377-78 (directing defendant to furnish plaintiffs' counsel with names and addresses of potential class members within fifteen days of the date of the order).

**CONCLUSION**

At this notice stage the question is whether the evidence meets the lenient standard in showing that the proposed Putative Class members are "similarly situated" for purposes of collective discovery and judicial notice. This lenient standard has been easily met. The Putative Class members were all subject to the same policy of no overtime pay for overtime hours worked. The Putative Class member's incentive and commission payments were also not included in the calculation of their overtime rate of pay. These common policies resulted in FLSA wage violations against all Putative Class members.

Based on the foregoing authority, the Court should allow this cause to be maintained as a collective action pursuant to 29 U.S.C. § 216(b) with respect to the claims set forth in the first amended complaint. Further, the Court should approve the notice attached to this memorandum and allow Plaintiffs' counsel to send this court-approved notice to potential opt-in plaintiffs. Finally, to facilitate the sending of the notice, the Court should direct Telecom to provide Plaintiffs with the contact information of class members as that class has been defined in this memorandum.

*Respectfully submitted:*

*/s/ Emily A. Westermeier*
BEAUMONT COSTALES LLC
Roberto Luis Costales (#33696)
William H. Beaumont (#33005)
Emily A. Westermeier (#36294)
3801 Canal Street, Suite 207
New Orleans, LA 70119
Telephone: (504) 534-5005
*eaw@beaumontcostales.com*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2018 I served a copy of the foregoing on counsel for Defendants via EC/CMF.

<u>*/s/ Emily A. Westermeier*</u>