UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LYNDSAY BLANK                                    CIVIL ACTION

VERSUS                                           NO. 16-11092

TOMORROW PCS, L.L.C., ET AL.                     SECTION "S" (3)

## ORDER

Before the Court are three motions: (1) Plaintiffs' Motion for Sanctions for Spoliation of Evidence [Doc. #116]; (2) Defendants' Motion to Compel [Doc. #125]; and (3) Defendants' Motion to Quash or Modify Subpoena [Doc. #131]. Having reviewed the pleadings and the case law, the Court rules as follows.

**I.    Background**

The background of this lawsuit has been adequately outlined by this and the District Court, and the Court need not do so again. *Blank v. Tomorrow, PCS, L.L.C.*, Civ. A. No. 16-11092, 2017 WL 4310675 (E.D. La. Sept. 28, 2017).

**II.   Plaintiffs' Motion for Sanctions for Spoliation of Evidence**

As this Court is aware, on October 23, 2017, plaintiffs propounded written discovery requests on Tomorrow Telecom Incorporated ("Telecom") that specifically requested e-mails from Telecom employees. On March 8, 2018, nearly five months after plaintiffs first requested them, Telecom issued its first substantive responses to plaintiffs' e-mail requests. Telecom claimed that all responsive e-mails had been deleted by Yahoo! on or about December 31, 2017. Plaintiffs maintain that Telecom had numerous opportunities to inform Yahoo! that critical e-mails for their case had been destroyed but made no mention of it. Had defendants been forthcoming about the destruction of the e-mails, plaintiffs argue that they and/or defendants could have recovered them.

Telecom's March 8, 2018 responses indicated that at least 19 former Telecom employees

communicated with plaintiffs or regarding plaintiffs while using their @tomorrowtelecom.com e-mail addresses specifically regarding overtime or chargebacks. Thus, plaintiffs contend that Telecom knew that the e-mails it failed to preserve contained communications relevant to plaintiffs' claims for unpaid overtime and chargebacks.

Plaintiffs argue that Telecom was in control of and had a duty to preserve the e-mails since they asked for them on October 23, 2017. Plaintiffs maintain that Telecom had control over the e-mails. Four of the e-mail account holders in question – Jong Park, Catherine Kim, Jeff Baik, and Michael Lim – were all current employees of defendants who have been active in this litigation. Jong Park was deposed; Catherine Kim, Jeff Baik, and Jong Park have aided in responding to plaintiffs' discovery requests since January 5, 2018; and Michael Lim submitted a sworn verification in support of Telecom's motion to dismiss.

Plaintiffs contend that Telecom's counsel purportedly issued a litigation hold, but it was obviously not communicated or maintained as the e-mails were nevertheless totally destroyed. Rather, Telecom engaged in a wait-and-see game that resulted in the deletion of highly relevant e-mails. Plaintiffs argue that the content of the e-mails highlights how devastating their deletion is to their case. These e-mails not only contain evidence of Telecom's control over Tomorrow PCS, but also other sub-dealers in other states. Michael Lim, Vice President of Telecom, sent e-mails to the "GMs" of the sub-dealers imposing on them a new "Charge Back Policy" being used by "Team Albuquerque." Lim further instructs these "GMs" how to implement the policy, by "changing the line 'Tomorrow Talk' [in the attached document] to your company [name]." Then, Jeff Baik, an Accounting Associate for Telecom, sent e-mails to the same "GMs," informing them of Telecom's new incentive system. And Steve Shin, the Chief Financial Officer of Telecom, sent an e-mail to

many of the same people to inform them of the June incentive plan for Telecom.

Plaintiffs maintain that Telecom's failure to preserve e-mails could only be an intentional act designed to deprive them of evidence that supports their claim that Telecom is liable as an employer under the FLSA and that its influence reached far wider than Louisiana and Texas. They ask the Court to sanction Telecom with an adverse presumption that these e-mails contain evidence of: 1) Telecom's status as plaintiffs' employer; 2) Telecom's control over Tomorrow PCS and its employees regarding employee compensation and the implementation of chargebacks; 3) Telecom's operations in other states and control over other affiliated sub-dealer locations.

Defendants argue that they supplemented their responses to discovery and produced 366 pages of e-mails from @tomorrowtelecom accounts that were discovered in a separate folder. Telecom does not dispute that it had a duty to preserve certain e-mail correspondence regarding its compensation methods and plaintiffs' employment but contends that it actively engaged to preserve all relevant ESI within its possession, custody, and control. They maintain that a litigation hold was issued to Jong Park, Michael Lim, and Catherine Kim on August 26, 2016, notifying them of their obligation to preserve company records related to the employment of Blank and other Customer Service Representatives during the three years prior the filing of the lawsuit. The litigation hold also called for the preservation of e-mail messages and attachments, backup e-mail files, and deleted e-mails.

Telecom notes that although it requested the preservation of company e-mails from its employees, it cannot control the maintenance of each individual employees' @tomorrowtelecom account nor can it unilaterally review and collect data from the employees' private accounts. Telecom employees set up personal e-mail accounts with Yahoo!, an independent carrier, which

is linked to an account associated with Telecom. Because these materials are not initiated or maintained on a company server, Telecom has no access to them. Even Lindsay Blank testified that Tomorrow PCS did not host her @tomorrowpcs e-mail account.

Telecom maintains that it had no knowledge regarding the e-mails' relevance because an attempt to retrieve the e-mails was not made until after the Court issued its February 26, 2018 Order wherein it sustained many of Telecom's objections to plaintiffs' discovery requests. Lim then conducted an inquiry regarding the unilateral deletion of e-mails by Yahoo! and discovered that this was an ongoing problem with Yahoo! e-mail account holders. Telecom then produced the results of Lim's inquiry revealing customer complaints to Yahoo! regarding the unilateral deletion of e-mails to customers.

Telecom notes that it did not destroy electronically stored information ("ESI"), and plaintiffs have failed to provide any evidence indicating that Telecom destroyed ESI. Yahoo! is not a party to this action, and the manner in which Yahoo! controls its user accounts is not determinative here. Telecom argues that plaintiffs' motion itself proves that the e-mails were not "totally destroyed" because they purport to have obtained copies of the e-mails from other sources.

Telecom notes that plaintiffs issued a subpoena to Yahoo!, as instructed by the Court on numerous occasions, and Yahoo! provided notice that it would respond to the subpoena within fifteen days. Finally, Telecom has recently recovered responsive information and provided it to plaintiffs. Therefore, it maintains that there has been no spoliation of ESI.

To impose an adverse inference, Telecom maintains that the evidence must show that a party had a dishonest, deceptive or culpable state of mind for the court to find that the party acted in bad faith. Telecom contends that plaintiffs have no direct proof suggesting that Telecom's

conduct was willful or the e-mails even relevant. It argues that plaintiffs have refused to take depositions of defendants' witnesses, despite court order and defendants' offering of multiple dates on at least three occasions. Unlike case law cited by plaintiffs, there is no evidence that Telecom willfully destroyed or altered evidence, and there is no evidence that Telecom lied to the Court regarding the e-mails.

Telecom asserts that plaintiffs have not been prejudiced and they have multiple means of seeking the information requested. Defendants have produced all responsive information to the extent possible, and Yahoo! has further indicated that it will provide a response to plaintiffs' subpoena. Moreover, to the extent there may be other responsive information, Telecom maintains that plaintiffs have access to some of this information through the Opt-in Plaintiffs' personal e-mail accounts, which they have attached as exhibits to the instant motion. And it contends that any alleged prejudice can be cured by taking the corporate deposition of Telecom.

The court's imposition of the adverse presumption based on spoliation of evidence is a severe sanction. Therefore, the showing required of the party seeking the sanction is exacting.

> Spoliation of evidence is the destruction or the significant and meaningful alteration of evidence. We permit an adverse inference against the spoliator or sanctions against the spoliator only upon a showing of "bad faith" or "bad conduct." A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant. Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence.

*Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (quotation and citations omitted) (emphasis added).

Thus, the party seeking the sanction must establish that "'(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was

destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Thermotek, Inc. v. Orthoflex, Inc.*, No. 3:11-CV-870-D BF, 2015 WL 4138722, at *12 (N.D. Tex. July 7, 2015) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 615-16 (S.D. Tex. 2010) (quoting *Zubulake v. UBS Warburg L.L.C.*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)) (citing *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d Cir. 2001))) (emphasis added).

A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation. *Rimkus*, 688 F.Supp.2d at 612 (citing *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008)). Once litigation is reasonably anticipated, a potential party to that litigation has a duty not to destroy "unique, relevant evidence that might be useful to an adversary." *Toth v. Calcasieu Parish*, No. 06-998, 2009 WL 528245, at *1 (W.D. La. 2009) (quoting *Zubulake*, 220 F.R.D. at 216). This factor is not at issue given that Telecom does not dispute that it had an obligation to preserve e-mails.

As noted, to sanction a party for spoliation of evidence, the party who destroyed evidence must have a "culpable state of mind." *SJS Distrib. Sys., Inc. v. Sam's East, Inc.*, No. 11 CV 1229, 2013 WL 5596010, at *3 (E.D.N.Y. Oct. 11, 2013) (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2nd Cir. 2002)). Culpability is not established by any bright-line test but rather analyzed on a case-by-case basis. *Id.* Therefore, culpability ranges from bad faith or intentional destruction of evidence by a party, to the gross negligence of a party to preserve evidence once the party knew or should have known that litigation was imminent. *See e.g., Yelton v. PHI, Inc.*, 279 F.R.D. 377, 391 (E.D. La. 2011). The Court finds that plaintiffs have not carried

their burden of demonstrating that Telecom had a culpable state of mind. Telecom did not destroy or delete the e-mails itself; Yahoo! did – and its policy of doing so has evidently angered numerous customers, not only the parties to this lawsuit. While Telecom may have been able to preserve the e-mails by contacting Yahoo!, the Court notes that the parties were involved in a hotly-contested dispute regarding the scope of plaintiffs' discovery requests – a dispute that his Court did not ultimately resolve until it issued its order on February 26, 2018. Yahoo! had already unilaterally deleted the e-mails by that date and not by any order or request of Telecom. The Court's analysis thus ends here as all three factors must be carried by plaintiffs to obtain an adverse presumption at trial.

### III. Defendants' Motion to Compel

Defendants' challenge plaintiffs' objection to numerous discovery requests. After defendants filed their motion to compel, plaintiffs agreed to supplement their responses to numerous requests, rendering those issues moot. Plaintiffs maintain their objection to numerous requests however.

> **Interrogatory ("Int.") No. 2 (12/15/17):**
>
> For all claims or defenses you will or may assert in the above-styled litigation, identify:
> a. the precise nature of such claims or defenses;
> b. all facts upon which you base such claims or defenses;
> c. all communications, including correspondence and oral communications related to the claims or defenses;
> d. all documents describing or relating to such claims or defenses;
> e. each person who has knowledge of any fact or possession or custody of any such document relating to such claims or defenses; and
> f. the specific nature and amount of all damages or set-offs related to such claims or defenses.
>
> Plaintiffs maintain their objection that this request is vague and overbroad. They maintain

that this is a catchall request that is not tailored to this litigation. They maintain that the six subparts seek information requested in other interrogatories and is overbroad. Defendants contend that they only seek information on the allegation made in plaintiffs' complaint.

**Int. Nos. 9-17 and RFP No. 23 (12/15/17):**

These interrogatories ask about plaintiffs' contentions and whether they hold certain specific contentions. Plaintiffs contend that most courts allow contention interrogatories only after a large amount of discovery has been conducted. They argue that contention interrogatories require a party to articulate theories before they have finished discovery on those theories. While the parties have engaged in discovery here, plaintiffs have still held no depositions of defendants or the supervising employees.

Defendants argue that plaintiffs have made numerous allegations in their motion practice, and they are entitled to know what information plaintiffs have to support the allegations. They also note that discovery is coming to a close, and if plaintiffs have no evidentiary support for some of their claims, they need to dismiss them.

With regard to Int. No. 2, the request is clearly overbroad. Basically, defendants ask plaintiffs to turn over all of the evidence that they have at this point in time. That is the definition of overbreadth. Defendants have now narrowed their request as outlined in correspondence to this Court dated June 15, 2018. The Court finds that the proposed interrogatories as outlined in that correspondence moot the issue of overbreadth, and plaintiffs shall now respond to the best of their ability at this point in time.

And with regard to the contention interrogatories, Federal Rule of Civil Procedure 33 states that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention

that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2). As such, when faced with the question of when to require responses to contention interrogatories, "[i]t is within the court's discretion to determine the appropriate time for responding to a contention interrogatory." *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. 13-373, 2017 WL 2825925, at *9 (M.D. La. June 30, 2017) (citing *In re Katrina Canal Breaches*, No. 05-4182, 2007 WL 1852184, at * 3 (E.D. La. June 27, 2007)).

Indeed, "most courts agree that '[d]ue to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted – typically at the end of the discovery period.'" *Sigman v. CSX Corp.*, No. 15-13328, 2016 WL 7444947, at * 2 (S.D. W. Va. Dec. 27, 2016) (quoting *Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 182 F.R.D. 486, 489 (W.D.N.C. 1998)). As the court in *Sigman* explains, there are a number of reasons to discourage the use of early contention interrogatories:

> First, there is "the unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed." In addition, "a lawyer's unwillingness to commit to a position without an adequately developed record will likely lead to vague, ambiguous responses," which are effectively useless. Moreover, in cases where the parties anticipate the production of "an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery."

*Sigman*, 2016 WL 7444947, at * 2 (internal citations omitted) (collecting cases); *see also Firefighters' Ret. Sys.*, 2017 WL 2825925, at *9.

At other times, courts have required parties seeking early contention interrogatories to "show that the interrogatories were limited, specifically crafted questions seeking responses that would "contribute meaningfully to clarifying the issues in the case, narrowing the scope of the

9

dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56.'" *Brassell v. Turner*, No. 05-476, 2006 WL 1806465, at *3 (S.D. Miss. June 29, 2006) (quoting *In re Convergent Techs. Secs. Litig.*, 108 F.R.D. 328, 338 (N.D. Cal. Oct. 28, 1985)).

While the District Court recently denied the motion to continue trial and all pre-trial deadlines, and the discovery deadline is currently July 31, 2018, the Court takes judicial notice from its familiarity with this lawsuit that much discovery is outstanding on both sides of this lawsuit at this point in time. The Court finds that neither party is in a position to respond to contention interrogatories at this time or to be bound by any single theory of the underpinnings of this lawsuit. Moreover, this Court does not favor and has never favored contention interrogatories. Accordingly, this motion is granted in part and denied in part as outlined above.

### IV. Defendants' Motion to Quash or Modify Subpoena

Plaintiffs propounded a subpoena on Yahoo! seeking documents and related information about the alleged deletions of defendants' employees' e-mails. Plaintiffs contend that such information may lead to evidence to support their motion for sanctions for spoliation of evidence. Defendants seek to quash or to modify the subpoena on various grounds, addressed *in seriatim* below.

Plaintiffs first respond in their opposition that defendants have no standing to challenge the subpoena on the ground that it is overbroad. This is true. *See Stogner v. Surdivant*, Civ. A. No. 10-125, 2011 WL 4435254 (M.D. La. Sept. 22, 2011) ("Finally, Mrs. Stogner's objections to the subpoenas directed to her health care providers/pharmacy on the grounds of burden and overbreadth are misplaced. She has no standing to object to the subpoena on such grounds since

she is not the responding party."); *Pub. Serv. Co. of Okla. v. A Plus, Inc.*, No. Civ. A. 10-651, 2011 WL 691204, *5 (W.D. Okla. Feb. 16, 2011) (finding that defendants lacked standing to challenge subpoenas directed to third-parties on the basis that the subpoenas are unduly burdensome and that "[e]ven if a party has standing to challenge a subpoena directed to a third party on privacy or privilege grounds, he may not challenge that subpoena on grounds that the information imposes an undue burden on the subpoenaed party."); *Keybank Nat'l Ass'n v. Perkins Rowe Assocs., L.L.C.*, Civ. A. No. 09-497, 2011 WL 90108, at *2 (M.D.La.2011) (holding that defendants had standing to challenge third-party subpoenas seeking the defendants' private bank records, but lacked standing to challenge other third-party subpoenas on grounds of relevance or undue burden to the subpoenaed non-party); *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, No. 8:06CV458, 2009 WL 1562851, *3 (D. Neb. June 1, 2009) (concluding that movant lacked standing to contest third-party subpoenas on grounds of undue burden or inconvenience).

In their reply, defendants assert that they challenge the subpoenas because they seek irrelevant and personal information about their former employees. This argument is easily dealt with: The documents shall be returnable to defense counsel for redaction of all personal identifying information of its former employees.

Defendants also maintain that the subpoena is not truly a subpoena but a deposition on written questions. This Court finds no support in the case law or the federal rules for quashing or modifying a subpoena on this ground, and defendants have cited this Court to none. Moreover, this Court finds that defendants play fast and loose with their selective quotations from the subpoena. As an example, the following is a direct quote from defendant's motion:

> Specifically, in paragraph 1, Plaintiff requests "[i]dentifying information regarding . . . users, including but not limited to. . . names, mailing addresses, phone numbers,

> billing information, date of account creation, account information and all other identifying information associated with the email addressed under any and all names, aliases, identities or designations related to the email addresses . . ." Identifying information is not a document.

[Doc. #131-1 at p. 5]. However, defendants conveniently omit the word "documents" from their quotation. Indeed, the word "documents" is actually the first word of the second elliptical deletion in the quote above. This Court has no stomach for legal subterfuge of this kind.

Defendants also contend that plaintiffs failed to describe the documents with particularity. This Court has reviewed the subpoena and finds this argument meritless. Defendants also assert that the subpoena seeks documents outside the discovery allowed by this Court's earlier orders. The Court will easily modify the subpoena to reflect this Court's prior orders.

What the Court finds particularly troubling about this motion is that *after months* of standing before this Court at oral argument on numerous discovery motions and arguing that they did not possess the documents and plaintiffs could subpoena Yahoo! for the documents that they allegedly destroyed, defendants now seek to impede the legal action that they appeared to sanction before this Court under penalty of sanctions under Rule 11. The Court will simply not abide this sort of legal gamesmanship. Defendants told plaintiffs to subpoena Yahoo!, and they have now done so. Accordingly,

The motion is granted in part to the extent that the documents be made returnable to defendants in the first instance to redact the personal identifying information of their former employees and to limit the subpoena to any prior limitations imposed by this Court through its numerous orders on earlier motions.

## V.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion for Sanctions for Spoliation of Evidence [Doc. #116] is denied at this time. This Order specifically reserves the right to plaintiffs to re-urge the motion at a later date.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel [Doc. #125] is denied in part and granted in part as outlined above.

**IT IS FURTHER ORDERED** that Defendants' Motion to Quash or Modify Subpoena is granted in part as outlined above.

New Orleans, Louisiana, this 27th of June, 2018.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**